**LINGNER et al. v. GAINES. (No. 8163.)**

(Court of Civil Appeals of Texas. Galveston. June 22, 1922. Rehearing Denied Oct. 5, 1922.)

1. **Pleading ☞253—Amendment of petition after answer cannot give right to file dilatory plea, where cause of action not changed.**

The filing of an amended petition, not setting up a new cause of action or changing the character of the cause of action alleged in the original petition, which defendants answered on the merits, without questioning plaintiff's right to maintain the suit, cannot give defendants the right to file a dilatory plea denying plaintiff's right to maintain the suit, which must be filed before answer to the merits.

2. **Partnership ☞108—Rule as to suits between partners before settlement applicable only to such as relate to partnership business.**

The rule that one partner cannot sue another until there has been a settlement of the partnership accounts or a winding up of the business applies only to suits based on transactions between the partners as such and relating to the partnership business.

3. **Partnership ☞108—Suit for conversion of deposit in bank conducted by partnership of which plaintiff is member maintainable without partnership accounting.**

A deposit in a bank by a member of the firm or association conducting the bank for her own private account is not a partnership transaction, and if the bank misapplies or converts the deposit, the depositor's claim does not arise out of the partnership business, and her suit does not involve a settlement of accounts, and may be maintained, though there has been no partnership settlement. ·

4. **Action ☞48(2)—Causes of action by landlord against bank held to grow out of the same transaction and properly joined.**

If a petition, alleging in one count the deposit in defendants' bank of the proceeds of a crop grown by plaintiff's tenant, with instructions to the bank not to pay out any part thereof on the tenant's account until settlement between her and the tenant, and a misapplication thereof by applying part of the deposit on the tenant's note to the bank, and, in a second count, that plaintiff was surety on such note, which was secured by a chattel mortgage, and that, notwithstanding plaintiff's willingness to pay the note and thereby become subrogated to the mortgagee's rights, the bank paid the note from the deposit, released the mortgage, and took a new mortgage to secure another debt, alleged two cases of action, growing out of the same transaction, and were not of such diverse character as to prevent their being joined.

5. **Appeal and error ☞1036(2)—In landlord's action against bank, joinder of tenant as nominal party held harmless.**

In a landlord's action against a bank for applying the proceeds of a crop deposited with it on the tenant's note, on which the landlord was surety, though instructed by the landlord not to pay any part of the deposit on the tenant's account, and though the landlord was willing to pay the note and take up the mortgage, the joinder of the tenant as a nominal party, without asking any judgment against him, was harmless to the bank. ·

6. **Banks and banking ☞134(5)—Bank, paying out proceeds of crop deposited with it contrary to landlord's instructions, held liable.**

Where plaintiff made advances to a tenant to enable him to make a crop, the proceeds of which were deposited by plaintiff with a bank, which was informed of plaintiff's interest in the tenant's share and instructed not to pay out any portion thereof without her consent, the bank, after accepting the deposit on such conditions, could not pay out the money or apply it on the tenant's indebtedness to it without becoming liable for the damage sustained by plaintiff.

7. **Banks and banking ☞134(5)—Mortgagee bank, applying deposit on debt knowing surety was looking to it for another debt and was willing to take up the mortgage, held liable.**

Where a bank applied proceeds of a crop deposited with it on tenant's note secured by mortgage, on which landlord was surety, knowing the tenant was insolvent, and the landlord was looking to the deposit for the repayment of an indebtedness, and was ready and willing to pay the note and thus obtain the benefit of the mortgage, it was liable for her loss of the security afforded by the mortgage.

Appeal from District Court, Jackson County; John M. Green, Judge.

Suit by M. S. Gaines against John Lingner and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Fly & Ragsdale, of Victoria, for appellants.

McCrory & Vance, of Edna, and Proctor, Vandenberge, Crain & Mitchell, of Victoria, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant John Lingner and 16 other named defendants, as partners or an association conducting a banking business under the name and style of the Farmers' Bank of Ganado, to recover the sum of $2,000, which the petition alleges defendants have wrongfully withheld from her and converted to their own use.

The petition contains two counts. The first count alleges in substance: That one R. T. Miller was her tenant, and grew rice on her lands, for the year 1918, and upon sale of the rice crop so grown drafts for the proceeds thereof, to wit, $8,662.51, were deposited in and received by said bank, with notice duly given by appellee to the bank's manager in charge that one-half of said sum was owned by her as rent due by her tenant, and that an additional sum of $1,800 to $2,-100 thereof was owned by her as advances made to him, and that she must first be paid out of said deposit the said respective sums so due her, and with positive instructions to pay out no part of said deposit to Miller, or on his order, or for or on his account, but to hold same subject to appellee's direction, order, and demand; that the rent of $4,331.-25 was thereafter paid to appellee, but that appellants unlawfully paid out, misappropriated, and converted the sum of $2,000 of said deposit without her consent, over her protest, and in disregard of her ownership thereof, and in violation of her express instructions, theretofore given, not to pay same out, but to hold said money subject to her direction, order, and demand. The facts and circumstances of the acquisition, appropriation, and ownership of the money and its deposit so made with appellants, together with appellee's express instructions to hold same subject to her order and demand, were all alleged in detail, and were the basis of the alternative plea in this count, to the effect that, if such facts and circumstances did not in law constitute an appropriation of and the ownership by appellee of the money so deposited, then, and in that event only, she was vested with an equitable lien thereto superior to any right or claim of the appellants.

The appellee in the second count of her petition, which count was an alternative plea, joined her tenant, R. T. Miller, with the said defendants of said bank, and sought recovery upon the grounds of collusion and fraud against her upon the part of said Miller and the said other defendants, arising under and by virtue of the facts following: Miller owed a note for $2,011, given to the Farmers' Bank, on which appellee was an accommodation maker, and on which, as between herself and Miller, she was a surety only. This note was secured by mortgage to the bank, covering chattels owned by Miller of the alleged value of $2,200, and notwithstanding appellee's express willingness, offer, and ability to pay this note, and thereby to become subrogated to all the rights of the mortgagee in, to, and over the said chattels, the appellant bank, through appellant Lingner, its manager, failed to foreclose said mortgage lien, and without appellee's knowledge or consent, and in violation of her express instructions to pay out no part of the said money deposited by and under her direction, but to hold same subject to her order and demand, paid this $2,011 note out of such deposit, and by such payment released said mortgage and forthwith took Miller's mortgage to said bank, covering the chattels so released, to secure Miller's new note of $2,500 to the bank, and that this was done by collusion between Miller and the bank defendants, and said defendants thereby became liable to her for the amount of the debt due by Miller to her by reason of the failure of said defendants to foreclose on said chattels.

The defendant's second amended answer, on which the case was tried, contained pleas of misjoinder of causes of action and of parties defendant, in that the petition shows upon its face that a cause of action for debt is joined with a cause of action for conversion, and that defendant Miller is sued for debt, while all the other defendants are sued for conversion, "and there is no privity of contract or of action alleged as between the defendant Miller and the other defendants herein, and these defendants here deny that any such privity of contract or action ever in fact existed." This answer also contained a general demurrer, numerous special exceptions, and a general denial, and also special pleas denying that the relation of landlord and tenant existed between the plaintiff and the defendant Miller, and averring that the plaintiff and said Miller were partners in raising the crop over the proceeds of which this controversy arose. They further expressly denied that they had any notice that plaintiff claimed any lien upon on any interest in the share of Miller in the proceeds of said crop, and denied that there was any fraud or collusion between them and the defendant Miller, as claimed in plaintiff's petition.

The cause was submitted to the jury upon special issues, and upon the findings of the jury judgment was rendered in favor of plaintiff against the bank and the individual

members of such firm or association, who were parties defendant, for the sum of $1,-480.69, and in favor of the defendant Miller, that he "go hence without day and recover his costs." In response to special issues submitted by the court, the jury found that the defendant Miller was a tenant upon a rice farm of appellee for the season of 1918 under a written rental contract or memorandum. By the terms of this contract appellee rented to defendant Miller and his associate, Charles Bowen, the farm and buildings described therein for a· term of 11 months, beginning on the 1st day of January, 1918, and ending on the 1st day of December, 1918. By the terms of this contract the appellee agreed to put the well and the machinery on the place in a good state of repair and pay all the costs thereof, except that Miller and Bowen were to perform such services as they could in making such repairs without charge to appellee. It was further stipulated that appellee was—

"to furnish one-half of rice, one-half of solar and lubricating oil, one-half barrel of gasoline, one-half of sacks, one-half of hauling, furnishes the use of engine and separator to thresh crop, pays for one-half of fuel and upkeep and one-half of engine and separator hand for this threshing outfit, one-half of twine, and hauls one-half of solar oil."

Miller agreed to plant and care for the crop in a good farmlike manner, making good and sufficient levees, and keeping .up the fences, and to pay appellee as rent one-half of the rice crop. The jury further found that appellee made necessary advances to Miller to grow and harvest the crop of rice grown by him on said farm during the season of 1918, and that the amount so furnished him was $1,480.96. Further findings of the jury were that when the rice was sold the draft received in payment therefor was deposited by appellee, or by her direction, in the appellant bank, and that before such deposit was made appellee notified defendant Lingner, the manager of the bank:

"That she had not then had a settlement with Miller, that Miller owed her one-half of the said proceeds for rent, and other sums for advances, which must be paid first, and not to pay out any of said proceeds, except upon her order and demand."

No question is raised by the appellants as to the sufficiency of the evidence to sustain these findings of the jury. The undisputed evidence shows that the appellant Lingner, manager of the appellant bank, paid or caused to be paid without the consent, knowledge, or acquiescence of appellee, $2,011 of Miller's one-half of the proceeds in satisfaction and discharge of a note for that amount due the bank by Miller and upon which appellee was surety. This note was secured by a mortgage executed by Miller upon personal property owned by him, and

which the jury found upon sufficient evidence was worth the sum of $2,050. The jury further found that prior to the time the bank applied these proceeds to pay off the note appellee notified the defendant Lingner that, if he or the bank did not care to carry this note, she would take it up, and appellee was ready and willing and able to take up the note. Neither of these findings is questioned by the appellants. The undisputed evidence shows that, after this $2,011 note was paid as above stated, the appellant bank released the mortgage given by Miller to secure same, made a new loan to Miller of $2,500, and took a new mortgage on the property covered by the first mortgage to secure the new note. The undisputed evidence shows, and the jury finds, that Miller was insolvent at the time the bank had these transactions with him.

Appellants' first assignment of error complains of the ruling of the court sustaining a motion of plaintiff to strike out a plea in abatement filed by the defendants. The bill of exception upon which this assignment is based is as follows:

"Be it remembered that during the pendency of the above styled and numbered cause the following pleadings of the parties were filed: Plaintiff's original petition was filed August 19, 1919, against the same defendants, who remained defendants throughout the trial, and asserted the same two causes of action in substance set up in the two counts of plaintiff's last petition, being her second amended original petition. Before defendants answered to the'' original petition, plaintiff filed her first amended original petition on March 4, 1920, and thereafter on the same 'day the defendants, against whom judgment has been taken, filed their original answer to said.first amended original petition, and urged certain pleas in abatement and exceptions thereto, which pleas in abatement raised the issue of misjoinder of causes of action and misjoinder of parties defendant, and their said pleas in abatement and certain exceptions were at said term overruled by the court, and certain exceptions were sustained and plaintiff thereafter amended her petition.

"On March 10, 1921, plaintiff filed her second amended original petition, upon which the case was tried, and thereafter, on the same day and before the filing of their exceptions and answer, or other pleadings replying to said amended petition, the defendants, against whom judgment has now been entered, filed their pleas in abatement to plaintiff's cause of action as set up in her second amended original petition that day filed, and asserted that in truth and in fact the plaintiff was a partner with defendants in the ownership and conduct of the Farmers' Bank at Ganado, Tex., at the time the cause of action arose, and that at the time of the institution of this suit there had been no settlement of the partnership accounts of said the Farmers' Bank of Ganado, nor had its business been wound up, and there had been no agreement between the partners upon the sum which each owed to the other, and no such accounting had yet been had at the time

of the trial; that plaintiff was without legal authority to prosecute said suit against her partners. On the same date, to wit, March 10, 1921, and upon the filing of said plea in abatement, the plaintiff filed and presented her motion to strike out said plea in abatement, for the reason that the same was not filed and presented in due order of pleading and had been waived, and for the further reason that said plea in abatement was not verified according to law. And the court, having heard and considered said motion to strike out the plea in abatement, sustained said motion and struck out said plea in abatement, and refused further to consider the same in said cause. And to the action of the court in sustaining said motion to strike out said plea in abatement, setting up partnership between plaintiff and defendants, and in striking out said plea in abatement, and in refusing to consider same, and in afterwards refusing to permit defendants to read the plea to the jury and to submit the issue of such partnership to the jury, the defendants at the time of the striking out of said plea, and at the time of the refusal of the court to permit the plea to be read to the jury and to submit the issue of partnership to the jury, in open court excepted, for the reason that said plea in abatement, being addressed to plaintiff's amended petition only then filed, came in due order of pleading, was not required under the law to be verified, and set up a meritorious defense to plaintiff's cause of action, constituting an abatement thereof, and raised an issue of fact, which should properly have been submitted to the jury for their finding.

"And upon the trial of said cause the defendant John Lingner testified that the partnership doing business under the name of the Farmers' Bank of Ganado was formed on the 1st day of September, A. D. 1917, and that plaintiff signed the articles of partnership and was a partner in said copartnership, and contributed the sum of one hundred ($100) dollars to the common fund representing her interest therein; that in the spring of the year 1919, when she was threatening to bring the suit that she afterwards did bring, she told him that she had disposed of her partnership interest in her sister, but that thereafter he learned that this was not true, and that she had not disposed of her partnership interest, and that she remained a partner in said copartnership until the 6th day of May, 1919, when the Farmers' Bank of Ganado purchased her partnership interest from her for a consideration of one hundred and fifteen ($115) dollars. and on said day plaintiff executed to said the Farmers' Bank of Ganado, Tex., the following receipt, to wit:

" 'Ganado, Texas, 5—6, 1919.

" 'Received from Farmers' Bank of Ganado, Tex., one hundred and fifteen and 00/100 dollars in full settlement of my stock in Farmers' Bank of Ganado, Tex. $115.00.

" '[Signed] M. S. Gaines.'

"And that on said above-named date the Farmers' Bank of Ganado, Tex., gave to said plaintiff the sum of one hundred and fifteen ($115) dollars in purchase of her partnership interest in said bank, and neither at the institution of the suit nor at the time of trial had there been a settlement of the partnership accounts of said bank, nor had its business been

wound up, nor had there been an agreement between the partners upon the sum which each owed to the other.

"Plaintiff testified in her own behalf on this issue that about February 1, 1918, she disposed of her interest to her daughter, a married woman residing in Harris county, Tex.; that she did not charge her daughter anything for it, but gave it to her; that she did not give her daughter any instrument in writing evidencing the transfer, but simply told her she could have it; that when she sold this interest to the bank on May 6, 1919, she was selling it for the benefit of her daughter, and did not read the written receipt which she signed; that she had told the defendant Lingner, on or about January 24, 1918, at the time she and R. T. Miller negotiated a loan from the Farmers' Bank, that she was going to dispose of her interest in said bank, because she did not want to be liable as a partner, and this was why she gave her interest to her daughter in February, 1918.

"And upon the submission to the jury of special issues for their determination and answer defendants requested the court to submit the following special issue, set out as question No. 1 in special issue requested by defendants, to wit: '(1) At the the time the bank paid Miller's portion of said fund, had plaintiff, M. S. Gaines, made a bona fide transfer and disposition of her partnership interest in said bank? If you answer this question in the negative, you need not answer the remaining questions propounded to you.' And the court refused to submit said special issue of partnership as required by the defendants, and refused to submit the issue to the jury in any other form, to all of which the defendants at the time in open court excepted, for the reason that said question as stated presented a proper and material issue for the determination of the jury.

"And defendants here now present this their bill of exceptions No. 1, and pray that the same be signed by the trial judge, ordered filed, and made a part of the record, which is accordingly done, with the qualification that plaintiff had testified she signed the paper for the organization of the bank, agreeing to take $100 in it, never received any writing evidencing an interest in it, and that she told defendant Lingner, at the time she signed the receipt for the $115, as she had theretofore told him, that she did not own an interest in the bank, and that she had given it to her daughter, and the sale was made for said daughter.

"John M. Green,
"Judge 24th Judicial District of Texas."

[1] The assignment cannot be sustained. The plea was not filed in due order of pleading, and was properly stricken out on that ground. The filing of the amended petition, which did not set up a new cause of action, or in any way change the character of the cause of action alleged in the former petition, to which defendants had answered on the merits, without questioning plaintiff's right to maintain the suit as brought, could not give defendants the right to then file a dilatory plea, which, under the rules, must be filed before answer to the merits. But the plea itself is without merit, and should have been

stricken out for that reason, even if it had been filed in time.

[2] The rule sought to be invoked by appellants applies only to suits based on transactions between partners as such and relating to the partnership business.

[3] The deposit in a bank, made by a member of the firm or association conducting the bank, for her own private account, is in no sense a partnership transaction. If the bank misapplies or converts the deposit, the claim of the depositor is not a claim arising out of the partnership business, and the settlement of accounts between partners is not involved in such a suit, any more than it would be in a suit by one partner in a banking firm against his copartner to recover for the value of a horse alleged to have been converted by the defendant. The general rule upon this subject is thus stated in 30 Cyc. p. 461:

"As a rule, an action at law by one partner against his copartners will not lie on a claim growing out of the partnership transaction until the business is wound up and the accounts finally settled."

On pages 61 and 62 of the same authority the reason for the rule is thus stated:

"The principal reason for requiring an accounting and settlement between copartners as a condition precedent to an action at law by one partner against another upon partnership claims and transactions are these: (1) A dispute of this nature ordinarily involves the taking of a partnership account; for until that is taken it cannot be known but that plaintiff may be liable to refund even more than he claims in the particular case. (2) In partnership transactions a partner does not, as a rule, become the creditor or debtor of the copartner, but of the firm."

We think it is obvious, from this statement of the rule and the reasons therefor, that it can have no application to appellee's suit. Her transaction with the bank out of which her claim arises was not had by her as a partner in the business of the bank, and a partnership accounting, or the liability of one partner to the other as such in conducting the business of the partnership, is not involved, and could not be injected into this controversy.

[4, 5] The second assignment complains of the refusal of the court to sustain appellants' pleas of misjoinder of causes of action and of parties. This assignment is without merit. If two causes of action are alleged in the petition, they grew out of the same transaction, and are not of such diverse character as to prevent their being joined in the same suit. Both counts of the petition in effect allege a wrongful conversion by the defendant bank of the property of appellee. While the defendant Miller was not a necessary party to the suit, being in fact only a nominal party, no judgment being sought against him by

244 S.W.—14

the petition, his presence in the case as such nominal party could not possibly have injuriously affected appellants. If there was error in making him a party, it was harmless as to appellants, and would not authorize a reversal of the judgment.

[6, 7] We think, upon the findings of the jury and the facts established by the undisputed evidence, which we have before stated, plaintiff was entitled to a judgment for the amount found by the jury to be due her by defendant Miller. The jury were authorized, if not compelled, to find from the evidence that Miller was a tenant on appellee's farm, and as such tenant raised the crop the proceeds of which are involved in this suit. The $1,480.69 advances made by appellee were necessary to enable him to make this crop, and under the law appellee had a lien upon the crop to secure the repayment of such advances. When the crop was sold, its proceeds came into the possession or control of appellee, and she placed such proceeds on deposit with the appellant bank, with instructions not to pay out any portion thereof without her consent, and at the time of making the deposit informed appellants of her interest in and claim upon Miller's one-half of the deposit for repayment of the advances due her by him. The bank, having accepted the deposit, under these conditions could not thereafter pay out the money, or apply it to any indebtedness due it by Miller without appellee's consent, and escape liability for the damage thereby sustained by the appellee. The bank's liability for the amount due appellee by Miller also arose upon the findings of the jury and the undisputed evidence, showing that $2,011 of this deposit was applied by it to the payment of the note for that amount due it by Miller, upon which appellee was surety, and that appellee's right to protect herself by subrogation to the bank's claim upon the property mortgaged by Miller to secure this note was destroyed by the action of the bank in releasing this mortgage and taking a new mortgage on the property to secure a new loan made by it to Miller. Knowing Miller's insolvency, and having been informed by appellee of her readiness and willingness to pay this note on demand, fair dealing and good faith on the part of the bank required that, before satisfying this note out of money to which it knew appellee was looking for repayment of the indebtedness due her by Miller, it give appellee the opportunity to take up the note and obtain the protection against loss suffered by the mortgage. By its course of conduct in these transactions the bank, without any necessity for so doing to protect itself, caused appellee to lose the security offered by the mortgage for the payment of the indebtedness due her by Miller, and should be held liable for such loss.

While, as before stated, we think the

facts found by the jury and shown by the evidence established the relation of landlord and tenant between appellee and Miller, and that appellee had a landlord's lien upon the crop and its proceeds to secure the payment of the amount due her for advances, her right against the bank is not dependent upon the existence of such lien. Miller owed her the amount of the advances. She had the funds in her possession or control with which to repay herself the amount due her by Miller, and when the bank received these funds on deposit, with the understanding that they were not to be paid out, except upon plaintiff's order or with her consent, it could not apply the funds in the way it did without becoming liable to appellee, regardless of whether appellee had a landlord's lien upon the crop from the proceeds of which the fund arose.

These conclusions render it unnecessary for us to discuss the various assignments of error presented in appellants' brief. If any error is shown in any of these assignments, in view of our conclusion that upon the unchallenged findings of the jury and the undisputed evidence that appellee was entitled to recover the sum adjudged her by the trial court, such error was harmless.

It follows, from these conclusions, that the judgment should be affirmed; and it has been so ordered.

Affirmed.